UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JASON G.,                                                                19-CV-01097-MJR
                                                                         DECISION AND ORDER
                            Plaintiff,

            -v-

ANDREW SAUL,
Commissioner of Social Security,

                            Defendant.

_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 13)

        Plaintiff Jason G.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying his application for Supplemental

Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have

moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, defendant's

motion (Dkt. No. 11) is granted, and the case is dismissed.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name
and last initial.

## BACKGROUND[2]

Plaintiff previously applied for SSI with an alleged disability onset date of February 15, 2012, and an Administrative Law Judge (ALJ) dismissed that claim on March 28, 2014. (Administrative Transcript ["Tr."] 75-79, 207, 236-237).

Plaintiff subsequently protectively filed another SSI claim on July 30, 2015, and alleged that he became disabled on July 30, 2014. (Tr. 16, 201). The claim was denied on September 30, 2015. (Tr. 80, 81-87, 90-101). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 68). On May 10, 2018, a video hearing was held before ALJ Bryce Baird. (Tr. 31-74).[3]  On July 26, 2018, the ALJ issued a decision that found Plaintiff was not disabled. (Tr. 12-28). Plaintiff sought Appeals Council review and his request was denied on June 19, 2019. (Tr. 1-6, 197-200). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

[3] Plaintiff was incarcerated at the time of the hearing, was imprisoned at Auburn Correctional Facility at the time of the decision, and later transferred to the Clinton Correctional Facility. (Tr. 7, 13, 33).

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

- 3 -

not less than twelve (12) months."   42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."   *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience."   *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."   *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."   *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."   *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."   *Id.* §§404.1520(c),

- 4 -

416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education,

and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *Prisoner Eligibility for SSI Benefits*

The "No Social Security Benefits for Prisoners Act of 2009" and corresponding regulations provide that an individual convicted of a crime and incarcerated for more than 30 consecutive days, has his SSI payments suspended for the duration of his incarceration and if the inmate is imprisoned for longer than 12 months, then his SSI benefits are terminated and the inmate would have to file a new application for SSI upon release. Pub.L.No. 111-115, 123 Stat. 3029 (2009); 20 C.F.R. §§ 416.1332, 416.1335.

Here, during the relevant period from the protective filing date of July 30, 2015, through July 26, 2018, the date of the ALJ decision, Plaintiff was out of prison for just a brief time – July 30, 2015 to some point in November 2015. (Tr. 12-28, 56). Thus, even if disabled, he would only be eligible for SSI for the period August to November 2015.

IV.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 30, 2015, the application date.  (Tr. 18).  At step two, the ALJ found that Plaintiff had severe impairments of anxiety, depression, anti-social personality disorder, lumbago, and right carpal tunnel syndrome ("CTS").  (Tr. 18-19).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19-20).

Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in the regulations except:

> he is limited to simple routine tasks that can be learned after a short demonstration or within 30 days.  He is limited to work that does not require driving a vehicle.  He is limited to no more than superficial interaction with public and up to occasional with co-workers.  Finally, he is limited to work that does not require team work such as on a production line, and work that involves performing the same tasks every day with little variation in location, hours, or tasks.

(Tr. 20-23).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff had no past relevant work.  (Tr. 23).  At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Housekeeper, Hand Presser, and Garment Sorter.  (Tr. 23-24).  Accordingly, the ALJ determined that Plaintiff had not been under a disability since July 30, 2015, the date her application was filed.  (Tr. 24).

V.  *Plaintiff's Challenge*

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not have any medical opinion evidence. The Court finds this argument without merit.

First, Plaintiff has the burden to prove disability; it is not the Commissioner's burden to disprove he is not disabled.  A claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps of the sequential analysis.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982); 20 C.F.R. § 416.912(a). "[Plaintiff] had a duty to prove a more restrictive RFC …." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (citing 42 U.S.C. § 423(d)(5)); *cf. Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").  Here, as explained below, Plaintiff failed to adduce evidence that he was disabled.

Second, the Commissioner attempted a consultative examination of the Plaintiff, but the Plaintiff failed to appear because he was in prison.  (Tr. 22).  In fact, Plaintiff was in prison for most of the time between his application and the ALJ's decision.  (Tr. 55-56 (Plaintiff testified that after November 25, 2005, he was only out of prison from April 25, 2011 to October 1, 2012 and from October 3, 2013 to November 2015)); Tr. 356 (Robbery in the Second Degree); Tr. 430 (Parole Violation, Robbery in the Third Degree, Criminal Possession, and Petit Larceny)).

- 8 -

Third, contrary to Plaintiff's argument, there are no "gaps" in the record due to missing medical records. Plaintiff's counsel indicated at the hearing that additional records he obtained were submitted and were in the record. (Tr. 36; 656-675). He also mentioned that he had sought records from the New York State Office of Temporary Disability Assistance (OTDA) "that might exist." (Tr. 36). He said he had not received a response to that request. (Tr. 36). The ALJ noted that the attorney's five-day rule letter provided no indication what those records might be, how they related to Plaintiff's claim, the dates covered, or whether any such records that might exist were treatment records. (Tr. 37; 281-282). "Plaintiff cannot simply identify arguable gaps in the administrative record...." *Dutcher v. Astrue*, No. 09-CV-1161-LEK/VEB, 2011 WL 1097860, at *5 (N.D.N.Y. Mar. 7, 2011). In addition to counsel's speculation that such OTDA records might exist, it is notable that no such records from OTDA have ever been submitted – not to the ALJ, not to the Appeals Council, and not to this Court. The Commissioner may rely not only on what the record says, but also on what the record does not say. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983).

The ALJ here evaluated the entire record, the medical reports, reports from Plaintiff, and the hearing testimony. (Tr. 18-24). "[T]he ALJ must weigh all the evidence to make a residual functioning capacity finding consistent with the record as a whole." *Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019). A medical source statement or formal medical opinion was not necessarily required where the record contains sufficient evidence from which an ALJ can assess the RFC. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017). That is, the ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination

as to disability. *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018); see *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (although an ALJ has a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete medical history, the ALJ is under no obligation to seek an opinion from a treating source); *Walker v. Astrue*, No. 11-CV-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sept. 26, 2012)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996 ("[A]n ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision.").

Plaintiff did have mental health diagnoses of depression, anxiety, and substance abuse-cocaine, alcohol, and marijuana. (Tr. 344, 435, 660). However, the "mere diagnosis" of a condition absent a finding as to the severity of symptoms and limitations does not mandate a finding of disability. *Rivers*, 280 F. App'x at 22. Moreover, the record here reveals minimal abnormal findings on mental exams ("MSE"). (Tr. 286 (Plaintiff said he was anxious and upset over parole authorities denying his request to be paroled to the county where his wife resided, but MSE was normal, except Plaintiff exhibited rapid speech and explained he often was a fast talker); Tr. 291 (MSE unchanged despite his claiming to be stressed out over residence issue on parole and having a dirty urine screen); Tr. 424 (in jail, appeared disheveled, but only other abnormal findings were just mildly impaired insight and judgment); Tr. 428 (was fully oriented with normal judgment and insight); Tr. 434 (fully oriented, normal motor behavior and speech, indifferent/sad/depressed mood, appropriate flat affect, no abnormal perceptions, unremarkable thoughts, intact memory, and adequate judgment); Tr. 439 (MSE normal

- 10 -

but for mildly impaired insight and judgment flat depressed affect); Tr. 442 (same)).  There is no evidence of any psychiatric hospitalizations during the period at issue, nor were there reports that Plaintiff was precluded from any prison activities or work details for any significant length of time.

After his alleged onset date, but prior to the SSI filing date, Plaintiff told Jennifer Bondonaro, LMSW, that he was not interested in taking any mental health medications, nor did he want to follow-up with a mental health provider.  (Tr. 286).  Although Plaintiff was later prescribed medications that could be used to treat anxiety and depression, that took place shortly before the May 2018 hearing.  (Tr. 660).  The record shows that in December 2015, at the County Holding Center after his arrest for bank robbery, Plaintiff alleged that he had been taking prescribed medications, but his pharmacy did not confirm his claims that he had prescriptions, including one for Effexor.  (Tr.436-437).  In August 2016, he did not have any prescriptions for medications for mental health.  (Tr. 610 (prescribed only Prilosec and Naprosyn)).  The same was true in October 2017.  (Tr. 599 (prescribed only naproxen, omeprazole, and an antibiotic)).

When Plaintiff sought SSI, he claimed that he had been in special education.  (Tr. 241).  However, he told Lisa Bennett, FMH, at the County Jail, that he was not in special education.  (Tr. 431).  He claimed to have been prescribed Ritalin and some other medication when young, but admitted that he started skipping school and drinking alcohol and using marijuana around ages 12-13, and later failed to complete 9th grade.  (Tr. 296-297).  When he applied for SSI, he reported that he stopped working due to his impairments, but at Spectrum Human Services, he acknowledged that his employer fired him in 2003 due to "chemical" use.  (Tr. 240, 361).  In December 2015, his pharmacy did

not confirm his claims that he had prescriptions for Effexor, Gabapentin, and Prilosec. (Tr. 436-437). His varying accounts call into question the accuracy of his subjective complaints. Accordingly, the ALJ found his allegations were not entirely consistent with the record evidence. (Tr. 21). An ALJ may reject a claimant's subjective allegations in light of inconsistent evidence. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009).

When an ALJ does not cite specific evidence, it does not mean that such evidence was not considered. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012); see *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983) (the court does "not require that [an] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

Based on the foregoing evidence about Plaintiff's mental treatment, the ALJ reasonably limited Plaintiff to performing unskilled work with limitations on interacting with co-workers and the public, no team work or production line work, and little variation in work location hours, and tasks. (Tr. 20-23). A limitation to unskilled work and simple routine repetitive tasks is sufficient to account for moderate limitations due to stress. *See Annarino v. Comm'r of Soc. Sec.*, No. 18-cv-130, 2019 WL 464604, at *3 (W.D.N.Y. Sept. 24, 2019) ("limitations for simple work and interaction with co-workers adequately account for plaintiff's stress limitations, despite the fact that the RFC does not explicitly use the term 'stress.'") (collecting cases).

Turning to Plaintiff's complaints of disabling physical conditions, again, the record provides little support for his allegations of disabling physical impairments. His only hospital treatment was in the emergency department after he was injured in a fight in

prison. (Tr. 559-561). The record is devoid of any medical report that recommended any surgery or other non-conservative treatment, and there was only Plaintiff's assertion that he previously was supposed to have CTS surgery, but he failed to have it. (Tr. 625). His failure to get the procedure done could reasonably suggest it was not a significant limitation to his activities.

Plaintiff did have a ruptured blister treated in an emergency department ("ED") in early July 2015, a few weeks prior to the relevant period. (Tr. 413). At the ED, Plaintiff admitted that he had not recently seen a physician. (Tr. 415). He told ED staff that he hit his back on a stair when he slipped and fell earlier that day and had mild back pain. (Tr. 415). Physical examination findings were mostly normal. (T416). Despite his reports of hurting his back that day, Plaintiff's back had full ROM and no tenderness, and the right foot had a large blister that ruptured and some erythematous between the toes and the foot was treated and he was released. (Tr. 413, 416). Similarly, at the County Holding Center in November 2015, findings on physical exam were all within normal limits. (Tr 427-428).

Plaintiff complained about assorted physical conditions that he claimed were disabling, primarily CTS, sleep apnea, back pain, foot problems, and alleged radicular symptoms that went down both legs, but denied any lasting sensory loss or weakness. (Tr. 577). Further, EMG testing found only mild reduction in recruitment in the right abductor pollicis brevis muscle and was otherwise normal, and Dr. Michael Vertino of SUNY Upstate Medical Center concluded that testing was consistent with very mild median neuropathy and found no evidence of significant lumbar radiculopathy. (Tr. 576-579). He had some limitations in lumbar ROM. (Tr. 581-582). He was provided a back

- 13 -

brace, wrist supports, medications, and a course of physical therapy.  (Tr. 518, 530, 533, 567, 568-573, 581-582, 585).  He had a sleep study that showed a likelihood of sleep apnea and received a CPAP.  (Tr. 540, 584).

When in prison, Plaintiff alleged foot problems and sought special insoles/arch supports, and was provided with some insoles, and did request a cane, but prison medical staff determined in April 2018 (about one month before the hearing) that there was no medical verification that a cane was needed.  (Tr. 530, 662).

The ALJ properly observed that Plaintiff had "very little" treatment for his physical complaints and did not have the type of care one would expect if he were as limited as he alleged.  (Tr. 21-22).  The ALJ cited to Plaintiff's conservative treatment history to support his conclusion that he was not disabled.  (Tr. 22).  It is proper for an ALJ to cite a claimant's conservative treatment history to support the conclusion that he is not disabled. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. Apr. 2, 2008); *see Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that treatment was essentially routine and conservative, consisting of medication management and physical therapy).

Plaintiff did not stop work in 2003 due to a disability, rather his employer fired him for substance abuse.  (Tr. 361).  An ALJ may consider the reasons that Plaintiff stopped working. *Karlsson-Hammitt v. Colvin*, No. 13-CV-916S, 2014 WL 5500663, at *7 (W.D.N.Y. Oct. 30, 2014).

Despite the minimal clinical findings and the ALJ's assessment that Plaintiff's allegations of disabling limitations were not fully consistent with the evidence, the ALJ

nonetheless afforded Plaintiff the benefit of the doubt and limited him to light work.  (Tr. 20).    Under  the  substantial-evidence  standard,  the  court  looks  to  an  existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations.  *Biestek*, 139 S. Ct. at 1154 (citations omitted).  In this case, substantial evidence supports the ALJ's findings regarding Plaintiff's physical functioning.

In sum, Plaintiff failed to meet his burden of establishing that he has disabling impairments.  *McIntyre*, 758 F.3d at 150 (2d Cir. 2014); *Schauer*, 675 F.2d at 59; 20 C.F.R. § 416.912(a).  The ALJ discussed the evidence and cited and discussed specific evidence in the record that supported the RFC.  Much of Plaintiff's argument is merely his disagreement with the ALJ's evaluation of the evidence.   The substantial evidence standard "is so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (citing *Console v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)).  As the Supreme Court recently stated, "the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high."  *Biestek*, 139 S. Ct. at 1154 (citations omitted).  "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."  *Brault*, 683 F.3d at 448 (emphasis in original).  So long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero*, 4 F. App'x at 46 (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

**CONCLUSION**

. For the following reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 11) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      January 22, 2021
            Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge